**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| DEAN B. HOLLIDAY, SR., | : | CIVIL ACTION NO. |
|     Petitioner, | : | 3:17–cv–1125 (JCH) |
| | : | |
|   v. | : | |
| | : | |
| KIMBERLY WEIR, | : | JANUARY 2, 2018 |
|     Respondent. | : | |

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)**

Petitioner, Dean B. Holliday, Sr. ("Holliday"), currently incarcerated at the Osborn

Correctional Institution in Somers, Connecticut, filed this habeas corpus action pursuant

to section 2254 of title 28 of the United States Code, challenging his conviction for

attempted robbery and conspiracy to commit robbery. <u>See</u> Petition for Writ of Habeas

Corpus ("Pet.") (Doc. No. 1). The respondent contends that Holliday is not entitled to

federal habeas relief on any ground for relief asserted in his Petition. <u>See</u> Respondent's

Memorandum of Law in Opposition to 28 U.S.C. § 2254 Application for Writ of Habeas

Corpus ("Mem. in Opp.") (Doc. No. 11). For the reasons that follow, the court concludes

that the Petition should be denied.

**I.    Procedural Background**

On April 26, 2006, Holliday was convicted following a jury trial in the Connecticut

Superior Court for the Judicial District of New Britain on two counts of attempt to commit

robbery and one count of conspiracy to commit robbery. <u>See</u> Pet. at 2. He was

sentenced to a total effective term of imprisonment of forty years, twenty years on the

first attempt charge, twenty years consecutive on the conspiracy charge, and ten years

concurrent on the second attempt charge. <u>See</u> <u>id.</u>

Prior to filing a direct appeal, Holliday sought review of his sentence by the Sentence Review Division of the Superior Court.  See State v. Holliday, 982 A.2d 268, 270 (Conn. App. 2009), cert. denied, 989 A.2d 605 (Conn. 2010).  On April 26, 2005, the Sentence Review Division remanded the case to the trial court with an order to resentence Holliday to thirteen years on the first attempt charge and twelve years consecutive on the conspiracy charge, for a total effective sentence of twenty-five years.  See id.  The sentence on the second attempt charge was not altered.  See id.

While the sentence review was pending, Holliday appealed his conviction.  See State v. Holliday, 856 A.2d 1041 (Conn. App.), cert. denied, 861 A.2d 1178 (Conn. 2004).  On direct appeal, Holliday challenged his conviction on four grounds:  (1) the evidence was insufficient to support his conviction, (2) the trial court improperly admitted evidence of prior misconduct, (3) the trial court improperly admitted Holliday's statement to the police, and (4) prosecutorial misconduct.  See id. at 1044.  The Connecticut Appellate Court affirmed the conviction, and the Connecticut Supreme Court denied certification to appeal.  See id.

In August 2005, Holliday filed a Petition for Writ of Habeas Corpus in this court.  See Holliday v. Martin, No. 3:05-cv-1243 (JCH), Petition for Writ of Habeas Corpus (Doc. No. 1).  When the respondent moved to dismiss the Petition as containing some unexhausted claims, Holliday sought to voluntarily withdraw the Petition without prejudice to refiling.  See Holliday v. Martin, Notice of Voluntary Dismissal (Doc. No. 29).  The court granted this request.  See Holliday v. Martin, Order Granting Notice of Voluntary Dismissal (Doc. No. 30).

In March 2006, Holliday filed a Petition for New Trial in state court.  See Holliday

v. State of Connecticut, No. HHB-CV06-4012524-S, 2007 WL 1121270, at *1 (Conn. Super. Ct. Mar. 29, 2007). In support of his Petition, Holliday cited newly discovered evidence, namely two redacted United States Department of Veterans Affairs ("VA") police reports. See id. The state court found that the Petition was time-barred. See id. The appellate court affirmed the state court's decision on appeal. See Holliday v. Connecticut, 960 A.2d 1101, 1103 (Conn. App. 2008), cert denied, 967 A.2d 112 (Conn. 2009).

In June 2008, Holliday filed a Motion to Correct Illegal Sentence in the criminal case, on the ground that his consecutive sentences violated his rights under the Eighth and Fourteenth Amendments. See State v. Holliday, 982 A.2d 268, 269 (Conn. App. 2009). The trial court denied the Motion, and the judgment was affirmed by the Connecticut Appellate Court. See id.

Holliday also filed three state habeas actions. Holliday filed the first action in July 2005, asserting several ineffective assistance of counsel claims that are not included in this action. See Holliday v. Warden, No. TSR-CV05-4000577-S, 2009 WL 6022059, at *14 (Conn. Super. Ct. Nov. 30, 2009), appeal dismissed, 37 A.3d 170, 171 (Conn. App.), cert. denied, 44 A.3d 182 (Conn. 2012). Holliday filed the second state habeas action in July 2010, asserting a claim of actual innocence. The trial court noted that the petition was a reiteration of claims already presented and denied the petition. See Holliday v. Warden, State Prison, No. TSR-CV10-4003667-S, 2012 WL 7656639, at *1 (Conn. Super. Ct. Nov. 16, 2012). Holliday's appeal was denied. See Mem. in Opp., App. B, Appellate Court Docket (Doc. No. 11-2) at 29–30. Holliday commenced a third state habeas action in April 2016, but withdrew his petition in July 2017. See Mem. in

Opp., App. B., Superior Court Docket (Doc. No. 11-2) at 31–32.

Holliday commenced this action by petition filed July 5, 2017. <u>See</u> Pet.

## II.    Factual Background

The Connecticut Court of Appeals determined that the jury reasonably could have found the following facts.  On April 4, 2001, Holliday was cleaning a retail store in anticipation of selling a failed business that he owned with his fiancée.  <u>Holliday</u>, 856 A.2d at 1044.  Between noon and 1:00 p.m., Holliday drove his fiancée's car to the Veterans Administration Federal Credit Union ("the Credit Union") in Newington, Connecticut.  <u>Id.</u>  He parked in a no parking zone.  <u>Id.</u>  Holliday was wearing latex gloves, heavy clothing, and a backpack.  <u>Id.</u>  Before entering the Credit Union, Holliday put the dust mask he had been using while cleaning the store over his face.  <u>Id.</u>

The manager was called when an employee became alarmed at Holliday's appearance.  <u>Id.</u>  When the manager approached him, Holliday lifted the mask slightly and asked if a person could cash a check if he were not a member of the Credit Union. <u>Id.</u>  When the manager stated that he could not cash a check there, Holliday thanked her and left the Credit Union.  <u>Id.</u>  He got into his car and drove away.  <u>Id.</u> The encounter lasted about forty-five seconds.  <u>Id.</u>  The manager contacted the police and told them of Holliday's suspicious behavior.  <u>Id.</u>  That evening, Holliday called his friend and told him that the security in the Credit Union was poor.  <u>Id.</u>

The following day, in response to her encounter with Holliday, the manager advised her employees to be prepared for trouble.  <u>Id.</u>  Holliday met his friend at the store, and the two men went to the Credit Union.  <u>Id.</u>  When they arrived, Holliday parked the car close to the building, again in a no parking zone.  <u>Id.</u>  The day was warm

and the front door to the Credit Union was propped open.  Id.  An employee of the Credit Union was walking to the front door as Holliday and his friend exited the car.  Id.  Both men were wearing latex gloves and dust masks.  Id.  The employee saw the men and saw Holliday reach into the back seat of the car and remove a black bag.  Id.  In response to the earlier warning from her manager, the employee slammed and locked the front door of the Credit Union.  Id.  Another employee contacted the manager who activated the alarm and called the police.  Id.

Holliday and his friend fled.  Id.  Holliday drove at a high rate of speed toward West Hartford.  Id.  He drove through traffic lights, wove through traffic, and drove on the pedestrian walkway.  Id.  Newington and West Hartford police responded to the call and pursued Holliday and his friend into West Hartford.  Id.  Holliday tried to avoid the police by driving into an industrial area, where the men abandoned the car and fled on foot.  Id.  A police dog tracked Holliday and his friend to a dumpster about two miles from the car.  Id.  The men were arrested.  Id. at 1045.  The police brought the Credit Union manager and two employees to the dumpster where they each identified Holliday, his friend, and the car.  Id.

The men were taken to police headquarters in separate police cars.  Id.  The police searched Holliday's fiancée's car and found two pairs of latex gloves, two dust masks, two duffel bags, another bag containing marijuana, and a .22 caliber shell.  Id.  At police headquarters, Holliday told the police that he knew his friend was planning to rob the Credit Union and that his friend frequently carried a large military knife and a silver handgun.  Id.  The police took Holliday back to the area where the men had abandoned the car and found a silver .22 caliber handgun.  Id.  The police returned to

headquarters with Holliday, and he gave another statement.  Id.

Holliday confessed as follows:  he had spoken with his friend the night before and told his friend that the security at the Credit Union was weak; he went to the Credit Union with his friend that morning; he gave his friend the dust mask; his friend had put on the dust mask and got out of the car; he knew that his friend was going to rob the Credit Union; when the employee slammed the door, he thought they had been detected and the police had been called; he fled from the Credit Union because the car had illegal marker plates and there was marijuana in the car; he had broken several traffic laws when fleeing from the police; and he knew his actions were wrong.  Id.

The Connecticut Appellate Court also noted that the jury could have found that, on August 30, 1995, Holliday entered a West Hartford bank wearing a stocking over his head and carrying a BB gun.  Id.  Holliday robbed the bank and put the money in a backpack he was carrying.  Id.  He was caught the same day and confessed.  Id.  The jury could have considered this information only in determining Holliday's intent.  Id.

III.    Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a) (2016).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002).  Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.  White v. Woodall, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014).  Second Circuit law that does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief.  See Renico v. Lett, 559 U.S. 766, 778–79 (2010) (holding that the court of appeals erred in relying on its own decision in a federal habeas action).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case.  See id.  The state court decision must be more than incorrect; it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011); see also Burt v. Titlow, ___ U.S. ___, 134 S. Ct. 10, 16 (2013) (stating that federal habeas relief is an appropriate remedy where the state criminal justice system has experienced an "extreme malfunction"); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (stating that objective unreasonableness is "a

substantially higher threshold" than incorrectness).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. Id.; Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (stating that the standard for evaluating state court rulings where constitutional claims have been considered on the merits is highly deferential and difficult for the petitioner to meet, as the state court decision must be given the benefit of the doubt). The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them," will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. Smith v. Mann, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Pinholster, 563 U.S. at 181–82. Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

## IV.    Amended Petition

On November 14, 2017, Holliday filed a document entitled "Amended and Supplemental Pleading." See Amended and Supplemental Pleading ("Am. Pleading") (Doc. No. 20). The respondent objects to the document as an amended petition filed

without obtaining leave of court.  <u>See</u> Objection re Notice (Doc. No. 21).

Federal habeas petitions are governed by the Federal Rules of Civil Procedure. <u>See</u> Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions of these rules, may be applied to a proceeding under these rules."). Federal Rule of Civil Procedure 15 governs amendments.  Fed. R. Civ. P. 15. Section 15(a)(1) provides that a litigant may amend his pleading as of right only within twenty-one days of serving the pleading or receiving service of a responsive pleading. <u>Id.</u> The respondent filed her answer on October 6, 2017.  <u>See</u> Mem. in Opp.  Thus, Holliday could amend his petition as of right only until October 27, 2017.  He did not do so.

Holliday, therefore, can amend his petition only with the respondent's written consent or leave of court.  Fed. R. Civ. P. 15(a)(2).  Holliday has obtained neither. Thus, any amendment is not properly filed.

A review of the document shows that Holliday is attempting to supplement his argument in support of the first ground for relief.  Thus, the court will considered this document as a reply brief and review the arguments in connection with the analysis of the challenge to the admission of prior misconduct evidence.

## V.    Discussion

Holliday challenges his conviction on three grounds.  First, Holliday challenges the trial court's decision to admit into evidence his statement to the police and evidence of prior misconduct.  <u>See</u> Typed Habeas Petition ("Typed Pet.") (Doc. No. 1-7) at 1–5. Second, Holliday argues that his petition for new trial should have been granted

because a federal agency and the state fraudulently concealed evidence. See id. at 5–6. Third, Holliday argues that the redacted VA police reports show that he is actually innocent. See id. at 6–9. Holliday included a fourth ground in his initial handwritten petition—a claim that the state deprived him of a fair trial by failing to correct false statements and false evidence. See Pet. However, the last document in the packet submitted is a typed petition indicating that the fourth ground is being withdrawn because Holliday did not exhaust his state court remedies. See Typed Pet. at 9. Accordingly, the court issued an Order to Show Cause directing the respondent to address the first three grounds. See Order to Show Cause (Doc. No. 5).

A. Admission of Evidence

In his first ground, Holliday argues that the trial court improperly admitted both his written statement to the police and evidence of prior robbery misconduct. See Typed Pet. at 1–5.

1. Statement to Police

On direct appeal, Holliday challenged the admission of his written statement to the police as violating his due process right to a fair trial. He argued that the trial court should have granted his motion to suppress because the statement was given to the police only after he was denied his right to counsel and was threatened by the police. See Mem. in Opp., App. K1, Appellant's Brief (Doc. No. 11-11) at 26.

In analyzing this claim, the Connecticut Appellate Court considered the following additional facts. See Holliday, 856 A.2d at 1047–48. Newington Police Officer Lavery testified at the hearing on the motion to suppress Holliday's statement. Id. Officer Lavery stated that he transported Holliday from the arrest scene to police headquarters.

Id.  Upon arrival, Officer Lavery informed Holliday of his rights and Holliday signed a waiver of rights form.  Id.  Officer Lavery then placed Holliday in a holding cell.  Id.  Officer Lavery did not question Holliday.  Id.

Newington Police Officer Gallagher testified that he was responsible for questioning Holliday.  Id. at 1048.  According to his testimony, he saw Officer Lavery read Holliday his rights and saw Holliday sign the waiver form.  Id.  Soon after, Officer Gallagher spoke to Holliday, who agreed to give oral and written statements.  Id.  Holliday gave an oral statement to Officer Gallagher who then typed the statement.  Id.  Holliday was permitted to make corrections to the typed statement before signing it.  Id.  Officer Gallagher was with Holliday the entire time he was being questioned.  Id.  Holliday did not ask to speak with an attorney.  Id.  Officer Gallagher stated that Holliday was questioned twice, each session lasting about forty-five minutes.  Id.  Holliday asked to call his fiancée, but the police would not let him do so until the questioning was concluded.  Id.  Officers Gallagher and Lavery both testified that no one threatened Holliday or his family.  Id.

After considering all of the evidence presented at the suppression hearing, the trial court determined that, based on the totality of the circumstances and his assessment of credibility, Holliday was afforded adequate warnings and intentionally and voluntarily waived his rights.  Id.  The court found that the police did not improperly influence him and made no promises or inducements to get Holliday to give the statement.  Id.  The trial court found that the conditions and duration of the questioning were not onerous and that the police acted reasonably and did not pressure Holliday to confess.  Id.  Thus, the trial court denied the motion to suppress.  Id.

On appeal, the appellate court recognized the trial court's application of the totality of the circumstances standard. See Holliday, 856 A.2d at 1048. The appellate court characterized the defendant's argument as consisting "solely of a wholesale attack on the court's factual findings." Id. Applying a clearly erroneous standard of review, the appellate court determined that the trial court's factual findings—that the circumstances of the interrogation were not onerous and the conduct of the police officers was reasonable—were supported by the evidence and therefore not clearly erroneous. See id. The court noted that the only evidence presented by Holliday was his own testimony that completely contradicted the officers' accounts. See id. However, the trial court credited the officers over Holliday. See id.

The appellate court determined that the officers' statements contained sufficient fact to support the trial court's factual findings and declined to retry the credibility determinations on appeal. Thus, the Connecticut Appellate Court rejected Holliday's claim regarding the denial of his motion to suppress his confession. See id. at 1048–49.

As the claim now before this court has therefore been rejected on the merits by the state court, this court can only grant the Petition if the state court's determination was contrary to clearly established federal law or based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Neither condition is true here. A confession is not voluntary when "the defendant's will was overborne at the time he confessed." Lynumn v. Illinois, 372 U.S. 528, 534 (1963). To determine whether a statement is voluntary, therefore, the court must look at the totality of circumstances under which the confession was made. See Arizona v. Fulminante, 499 U.S. 279, 285–86 (1991); see also Dickerson v. United States, 530 U.S. 428, 434 (2000) (stating that

the test for whether a confession is voluntary or coerced under the Due Process Clause considers the totality of the circumstances surrounding the confession, including both the characteristics of the accused and the details of the interrogation).

In reviewing a challenge to the voluntariness of a confession on a federal petition for a writ of habeas corpus, "the ultimate issue of 'voluntariness' [of a confession] is a legal question requiring independent federal determination." <u>Miller v. Fenton</u>, 474 U.S. 104, 110 (1985). Thus, the state court's finding of voluntariness is not presumed correct under section 2254. However, subsidiary factual questions, including whether the police engaged in the actions alleged by the criminal defendant, are entitled to the presumption of correctness found in section 2254(d). <u>Id.</u> at 112. Thus, such factual determinations by the trial court are presumed correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In this case, the Connecticut Appellate Court reviewed the actions of the trial court, which considered the totality of the circumstances as required under Supreme Court law. The Connecticut Appellate Court also deferred to the factual findings of the trial court as sufficiently supported by the facts in the officers' testimony. In his Petition, Holliday does not argue that the state appellate court applied the wrong legal standard. <u>See</u> Typed Pet. at 1–5. Rather, he again presents newly discovered evidence challenging the trial court's factual findings. <u>See id.</u> As noted above, this court is permitted to disturb the state court's factual findings and decision to credit the officers' testimony only if Holliday presents clear and convincing evidence to the contrary. <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) ("A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude that the

decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.").

Specifically, Holliday points to a clean copy of his statement, which has a different signature than the underlined copy that he signed. <u>See</u> Typed Pet. at 1–2. He argues that this duplicate copy contained a forged signature. <u>See id.</u> However, he acknowledges that he signed the underlined copy of the statement. <u>See id.</u> at 5. As Holliday continues to admit signing at least one copy of the statement, the existence of a clean, duplicate copy that he claims he did not sign is not sufficient to rise to the level of clear and convincing evidence. Nor is Holliday's claim that he signed "not to adopt the statement as his own, but [ ] to solidify that he did not agree with it." <u>Id.</u> at 5. As the appellate court noted, his testimony conflicts with the officers' testimony, which the trial court credited, and which makes no indication that Holliday indicated any disagreement with the statement. <u>See</u> <u>Holliday</u>, 856 A.2d at 1047–48. Thus, neither his testimony nor the clean copy amount to clear and convincing evidence sufficient to rebut the presumption that the state court's factual findings are correct.

Because Holliday has neither challenged the legal standard applied by the state court nor presented clear and convincing evidence in this court to call the state court factual findings into question, this court concludes that Holliday has not shown that the Connecticut Appellate Court's decision is an unreasonable application of Supreme Court law. The Petition for Writ of Habeas Corpus is therefore denied on this claim.

## 2. <u>Prior Misconduct</u>

Holliday also challenges the admission of prior misconduct evidence. <u>See</u> Am. Pleading. The respondent argues that this is a state evidentiary ruling and not

reviewable on a federal petition for writ of habeas corpus.  See Mem. in Opp. at 16–19.

Federal habeas corpus relief is not available for errors of state law, including allegedly erroneous evidentiary rulings.  Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). See generally Crane v. Kentucky, 476 U.S. 683, 689 (1986) (noting the Supreme Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts").  A federal court may issue a writ of habeas corpus based upon state evidentiary error only if the petitioner shows that the ruling was incorrect under state law and that the error denied him his constitutional right to a fundamentally fair trial.  See Perez v. Phillips, 210 Fed. App'x 55, 57 (2d Cir. 2006).

On direct appeal, Holliday argued that the prosecution introduced evidence of prior misconduct not to demonstrate intent but as evidence of his bad character.  See Holliday, 856 A.2d at 1046–47.  Thus, Holliday argued that the evidence was more prejudicial than probative.  See id.  The Connecticut Appellate Court noted that admission of evidence of uncharged misconduct is "properly within the discretion of the trial court" and that every presumption should be made in favor of the trial court's ruling. Holliday, 856 A.2d at 1047.  The appellate court determined that the evidence was relevant to prove intent, one of the exceptions to the bar against uncharged misconduct and that the probative value of the evidence outweighed any prejudice.  See id.  The appellate court also noted that any prejudicial effect was reduced by the limiting instruction given by the trial court and concluded that the trial court ruling was not an abuse of discretion.  See id.

Holliday states that intent to commit a robbery and intent to commit attempted robbery are different and argues that, because the word "intent" has several meanings,

introduction of prior misconduct evidence was more prejudicial than probative.  <u>See</u> Am.

Pleading at 3.  These are, in essence, the same arguments he raised on direct appeal

where he characterized the prior misconduct evidence as propensity evidence and

argued that prejudice significantly outweighed any probative value.  <u>See</u> Mem. in Opp.,

Ex. K1 (Doc. No. 11-11) at 29–34.  The Connecticut Appellate Court applied state law in

analyzing this claim and determined that the trial court did not abuse its discretion in

admitting the prior misconduct evidence with a limiting instruction.  <u>See</u> <u>Holliday</u>, 856

A.2d at 1047.  Holliday now disagrees with the correctness of that decision, as he did on

appeal.

        In this case, the court need not decide whether the trial court admitted the prior

misconduct evidence in error because, even if the evidence was admitted in error, the

error did not deny Holliday of his constitutional right to a fundamentally fair trial.  "Such

unfairness will only result where: '[T]he erroneously admitted evidence, viewed

objectively in light of the entire record before the jury, was sufficiently material to provide

the basis for conviction or to remove a reasonable doubt that would have existed on the

record without it.  In short it must have been crucial, critical, [and] highly significant.'"

<u>McKinnon v. Superintendent, Great Meadow Corr. Facility</u>, 422 Fed. App'x 69, 73 (2d

Cir. 2011) (quoting <u>Collins v. Scully</u>, 755 F.2d 116, 19 (2d Cir. 1985)).

        In this case, the admission of the prior misconduct evidence does not rise to that

standard.  The jury heard evidence that Holliday entered the Credit Union the day

before the robbery wearing latex gloves.  <u>See</u> <u>Holliday</u>, 856 A.2d at 1044.  His face was

obscured by a dust mask.  <u>See</u> <u>id.</u>  That evening he told his friend about the lax security

at the Credit Union.  <u>See</u> <u>id.</u>  The following day, Holliday and his friend returned to the

Credit Union.  See id.  Holliday provided his friend a dust mask.  See id.  The two men exited the car wearing dust masks to cover their faces.  See id.  In light of the record evidence, the court cannot conclude that the prior misconduct evidence was material to the basis for the conviction.  Thus, the Connecticut Appellate Court's determination regarding admission of prior misconduct evidence only to show intent did not deprive Holliday of a fair trial.  Thus, federal habeas review is not available on this claim.

      B.      Fraudulent Concealment of Evidence

Holliday filed a petition for new trial that was denied as untimely filed.  See Holliday, 2007 WL 1121270.  On appeal, Holliday argued that the limitations period was tolled because the State fraudulently concealed his "newly discovered evidence."  See Holliday, 960 A.2d at 1104–06.  The respondent contends that federal habeas relief is not available on this claim because Holliday is not constitutionally entitled to file a petition for new trial.  See Mem. in Opp. at 19–22.  Thus, any decisions by the state trial and appellate courts are matters of state law only.  See id.

A federal court is authorized to grant a writ of habeas corpus only when a state holds the petitioner in custody in violation of "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also Estelle, 502 U.S. at 67–68.  The Constitution does not, however, require the states to provide post-conviction proceedings.  Lackawanna Cty. Dist. Att'y v. Cross, 532 U.S. 394, 402 (2001) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987)).  The Second Circuit, along with a majority of the other circuits, has held that "alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief."  Word v. Lord, 648 F.3d 129,

132 (2d Cir. 2011) (citing Lawrence v. Branker, 517 F.3d 700, 716–17 (4th Cir. 2008); Bell-Bey v. Roper, 499 F.3d 752, 756 (8th Cir. 2007)).

As Holliday has no constitutional right to file a petition for new trial, any error associated with that petition is not cognizable in this action. Holliday's Petition is denied with regard to the second ground for relief.

C.    Actual Innocence

In his final ground for relief, Holliday contends that he is actually innocent of the charge. See Typed Pet. at 6–8. He bases his argument on "newly discovered evidence," namely two police reports from the Department of Veterans Affairs. See id.

The respondent argues that this claim is not cognizable because the Supreme Court has never recognized a freestanding claim of actual innocence. See Mem. in Opp. at 22–24. The respondent is correct. See Williams v. Pennsylvania, 136 S. Ct. 1899, 1921 (2016) (Thomas, J., dissenting) ("Nor has this Court ever held that [the petitioner] has a right to demand that his postconviction court consider a freestanding claim of actual innocence . . . ." (citing Herrera v. Collins, 506 U.S. 390, 417–19 (1993)); McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); Herrera, 506 U.S. at 400 ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").[1] Rather, the Supreme Court considers actual innocence to be a

---

[1] The Supreme Court in Herrera "assumed, for the sake of argument in deciding [the] case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue

18

threshold claim the petitioner must demonstrate before the court will consider a procedurally defaulted claim.  See, e.g., Schlup v. Delo, 513 U.S. 298, 315 (1995) ("Schlup's claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" (citation omitted)); Herrera, 506 U.S. at 416–17 (1993) ("Our federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the merits, even though his habeas petition would otherwise be regarded as successive or abusive. History shows that the traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency.").  Because the Supreme Court has not recognized actual innocence as a freestanding ground for relief, the Petition is denied on this ground.

In addition, Holliday's evidence does not demonstrate actual innocence.  In considering claims of actual innocence to excuse a procedural default, the Supreme Court requires the petitioner to show actual, as opposed to legal, innocence.  See Bousley v. United States, 523 U.S. 614, 523 (1998); Sawyer v. Whitley, 505 U.S. 333, 339–40 (1992).  Holliday attaches to his Petition copies of two Department of Veterans Affairs police reports.  The first report is of the crime underlying Holliday's conviction. See Pet., Ex. P (Doc. No. 1-2) at 25–36.  Holliday cites this report to show that Credit

_____

open to process such a claim." Herrera, 506 U.S. at 417.  However, neither Herrera nor any subsequent Supreme Court decision has held that such a freestanding claim exists.  See United States v. Quinones, 313 F.3d 49, 67–69 (2d Cir. 2002) ("But, while the Court assumed, only for the sake of its analysis, that capital punishment of a person who is able to demonstrate his innocence prior to execution violates the Constitution, it made no such holding." (emphasis in original)).  Additionally, the language of Herrera limits this hypothetical actual innocence claim to capital cases and therefore would not apply to Holliday's case regardless.

Union employees were unable to positively identify him at the scene of his arrest. However, the report states that Credit Union employees positively identified the suspects and the vehicle.  See Id. at 29 ("CREDIT UNION EMPLOYEES . . . WERE BROUGHT TO THE CRIME SCENES TO IDENTIFY THE VEHICLE AND THE SUSPECTS. AFTER MAKING POSITIVE IDENTIFICATION OF THE SUSPECTS AND THE VEHICLE . . . .").

The second report relates to information about two men who intended to rob the Credit Union in March 2001.  In response, Newington and Department of Veterans Affairs police set up surveillance of the Credit Union on April 3, 2001.  See Pet., Ex. N, (Doc. No. 1-2) at 49–54.  Holliday argues that the Credit Union employees were anticipating a robbery based on the information in the report and mistakenly assumed he was the man referenced in the report.  Holliday ignores the fact that the report, although redacted, clearly states that the information regarding a possible robbery was not shared with Credit Union employees.  See id. at 53 ("DUE TO SECURITY REASONS AND GENERAL PANIC THAT MIGHT OCCUR CREDIT UNION AND HOSPITAL STAFF WERE NOT ADVISED").   Whether another person was considering a robbery does not prove that Holliday did not attempt to do so.

"To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  Bousley, 523 U.S. at 623 (quoting Schlup, 513 U.S. at 327–28).  Neither of the reports, considered separately or together, reached this standard.  Therefore, Holliday has not established that he was actually innocent of the crimes.

For both these reasons, his Petition is denied on this ground.

**IV.    Conclusion**

The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DENIED**.  The court

concludes that an appeal of this order would not be taken in good faith.  Thus, a

certificate of appealability will not issue.

The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of January, 2018.


                                    /s/ Janet C. Hall
                                    Janet C. Hall
                                    United States District Judge